[Crim. No. 2225. Second Appellate District, Division Two.—January 28, 1933.]

THE PEOPLE, Respondent, v. A. L. FERGUSON, Appellant.

Jarrett Beckett for Appellant.

U. S. Webb, Attorney-General, and James C. Hollingsworth and Burton L. Rogers for Respondent.

STEPHENS, J.—This case was decided by this court September 19, 1932. Later a rehearing was granted and we now, after a thorough re-examination of the case and authorities, arrive at the same conclusion that we heretofore announced. In granting a rehearing we were impressed with the idea that the decision was harsh and that it was entirely possible that a man with innocent intent might be sent to the penitentiary. We have ever had this in mind during our re-examination. We cannot, however, avoid the rule as expressed in the opinion, upon ample authority and reason, that "Where the power exists to legislate, the court is not concerned with the wisdom or expediency of the law." We have also had in mind the circumstance that the minimum punishment for the offense is incarceration in the state penitentiary and that the court is without the power to consider or grant probation. The underlying difficulties of this case are in principle thoroughly discussed and considered in *People* v. *O'Brien*, 96 Cal. 171 [31 Pac. 45], and we think our opinion is in accord therewith. As suggested in the last-cited case, there is a remedy for relief if the severity of the law visits an undeserved punishment upon a defendant. The pardoning power is available to him. If, as a matter of fact, the evidence points to the entire innocent intent of defendant, while the fact that he violated the law is undisputed, he will unquestionably be accorded the chief executive's consideration. We express no opinion upon the merits of this phase of the case. We adopt our former opinion with some minor deletions and additions.

Defendant below, appellant here, was convicted by a jury of the possession of "metal knuckles" (Stats. 1923, p. 695,

Stats. 1925, p. 542, and Stats. 1931, p. 2316), and appeals from the judgment and from the denial of a motion for new trial. Several specifications of error are presented to us for consideration.

The specification that the verdict is contrary to the evidence cannot be sustained, for the reason that the evidence is conclusive even to the extent of the admission by appellant himself that he was the owner and possessor of the knuckles for a long time prior to and at the time of his arrest.

The specification that the statute is invalid as an *ex post facto* law cannot be sustained. (*People* v. *McCloskey*, 76 Cal. App. 227 [244 Pac. 930].)

The specification that the district attorney was guilty of misconduct is without merit.

The specification that section 417 and section 467 of the Penal Code repeal the statute here invoked is without merit as they concern the use rather than the possession of certain weapons.

The specification that the court erred in refusing a new trial should be denied upon our reasoning as to the next point treated.

Appellant claims that the statute should be construed so as not to cover possession of metal knuckles as an heirloom, keepsake or curio; and if not so limited it is unconstitutional as being unreasonable and arbitrary.

Briefly, the testimony is as follows: Officers in searching the house in which appellant lived found the knuckles. One officer testified that appellant while in the doorway of one room reached around into another room and that he (the officer) followed appellant's arm and hand with his hand to a shelf where he found the knuckles and they were warm. Another officer says he felt them immediately and they were warm.

The evidence of appellant is that he acquired the knuckles from his father and brought them to California several years ago; that he has never carried them on his person, although he has moved them with him when removing from one residence to another; that during the last few months prior to his arrest they were kept in a dresser drawer or upon a shelf in the house where he was living, and that he had always kept them as a keepsake or curio. The trial

judge permitted this testimony over objection, but instructed the jury that possession was the test of guilt and declined to instruct that their use or lack of use, or their being kept as a keepsake or curio, would affect the guilt or innocence of the accused.

In principle the question has been conclusively answered by the appellate courts of this state. In *People* v. *Gonzales*, 72 Cal. App. 626 [237 Pac. 812], the constitutionality of the so-called Firearms Act (Stats. 1923, p. 695) was under consideration. In that case as in the instant case the conviction was sought to be reversed because the statute made criminal the mere possession of a weapon. Likewise in each case the appellant claims an entire lack of criminal intent. The court in the case cited, quoting from page 630, said: "In the case of *People* v. *Wolfrom*, 15 Cal. App. 732 [115 Pac. 1088], it is said: 'When the intent is not made an affirmative element of the crime, the law imputes that the act knowingly done was with criminal intent, and it need not be alleged nor proven.' A perusal of the statute which is the subject of appellant's attack shows that the mere possession of a firearm by any person described in the act is sufficient to constitute a criminal offense. The language of the statute is that ' . . . no person who has been convicted of a felony against the person or property of another or', etc., 'shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person.' By the statute, intent on the part of a defendant accused of the commission of the offense is not made an essential to the completion of the criminal act; and whether or not the act was committed knowingly would necessarily be a question of fact for determination by the jury." (See *Ex parte McClain*, 134 Cal. 110 [66 Pac. 69, 86 Am. St. Rep. 243, 54 L. R. A. 779].) For a very able exposition of the law on intent, see *People* v. *O'Brien*, 96 Cal. 171 [31 Pac. 45].

The general subject under discussion is treated in the following cases: *People* v. *Gonzales*, 72 Cal. App. 626 [237 Pac. 812], *People* v. *James*, 71 Cal. App. 374 [235 Pac. 81], *People* v. *Camperlingo*, 69 Cal. App. 466 [231 Pac. 601], *People* v. *McCloskey*, 76 Cal. App. 227 [244 Pac. 930], and *People* v. *Rogers*, 112 Cal. App. 615 [297 Pac. 924]. We find the following in section 64, volume 5,

California Jurisprudence: "Where the power exists to legislate, the court is not concerned with the wisdom or expediency of the law. If there is any theory upon which the provision might reasonably have been concluded by the legislature to be essential, the court may not interfere."

Firearms have their legitimate uses; hence the law regulates their use and prescribes who shall be prohibited their possession. ■ But there is impressed upon slung-shots, sandbags, blackjacks and metal knuckles the indubitable *indicia* of criminal purpose. To every person of ordinary intelligence these instruments are known to be the tools of the brawl fighter and cowardly assassin and of no beneficial use whatever to a good citizen or to society. The legislature may take note of and act upon such common facts. (*Ex parte Yun Quong,* 159 Cal. 508 [114 Pac. 835, Ann. Cas. 1912C, 969].) It can regulate and proscribe the use of a thing so that its beneficial use may be enjoyed and its detrimental use prohibited. It follows that if the beneficial use of a thing is entirely lacking or grossly disproportionate to its harmful use the police power may absolutely prohibit its possession. (*Ex parte Yun Quong, supra.*)

There is no question of mistake or unwilling or unwitting possession in this case. Appellant intentionally brought this weapon into this state and moved it about with him as he removed from place to place. Should he have resolved to use it for the cruel purpose for which it was made it was ever in easy reach. A defense of innocent intention in its possession as an heirloom, curio or otherwise would, in the main, necessarily be dependent upon the testimony of the accused as to his intention. The almost impossibility of proof in such a case is obvious, and in good reason may have been one of the causes for making "possession" the gravamen of the offense.

Whether or not the law would apply to a museum keeper is outside of this case, for the reason that there is no evidence that puts appellant in the category of a museum keeper. ■ It may well be added, however, that the legality of statutes is not measured by extreme or unlikely situations. (*United States* v. *Kirby,* 7 Wall. (U. S.) 482 [19 L. Ed. 278]; *In re Reineger,* 184 Cal. 97, at p. 104 [193 Pac. 81].) When the statute is read as a whole it seems

clear that the legislature meant to enact no halfway measure, for it is therein provided that "blackjacks, slung-shots, billies, sand-clubs, sandbags and metal knuckles are hereby declared to be nuisances and shall be subject to confiscation and summary destruction whenever found within this state". It is evident to us that the effective prohibition of the criminal use of weapons of this sort depends upon the right to prohibit possession thereof, and that the law does not intend to and does not in fact make any exception of heirlooms, curios or keepsakes of individuals. As to museum keepers we have already said we make no expression of opinion.

The statute does not offend against the state or the national constitutions, and we think the trial court was right in instructing the jury that possession under the facts of this case was the essence of the offense and in refusing to give instructions in conflict with that principle.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 27, 1933.